**Daniel A. Cribbs, Esq., Bar No. 173799**
**Teresa L. Ortega-Smith, Esq., Bar No. 192262**
**SEGAL MCCAMBRIDGE SINGER & MAHONEY, LTD.**
11900 WEST OLYMPIC BOULEVARD, SUITE 500
LOS ANGELES, CALIFORNIA 90064-0704
TEL:  (310) 207-7722 • FAX:  (310) 207-6550
dcribbs@smsm.com; tortega@smsm.com
LAService@smsm.com

**Daniel Dorfman, Esq., Bar No. 6286059**
**Edward Keidan, Esq., Bar No. 6229552**
**FOX SWIBEL LEVIN & CARROLL LLP**
200 W. MADISON STREET, SUITE 3000
CHICAGO, ILLINOIS 60606
TEL: 312-224-1200 • FAX: 312-224-1201
ddorfman@foxswibel.com; ekeidan@foxswibel.com

AMERICAN WIRE GROUP, LLC

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSENDIN ELECTRIC, INC., <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN WIRE GROUP, LLC, POLYCAB INDIA, LTD., and DOES 1-25, inclusive, <br><br> Defendants. | Case No. 2:25-cv-03357-TLN-CKD <br><br> **AMERICAN WIRE GROUP LLC'S ANSWER AND DEFENSES TO COMPLAINT OF ROSENDIN ELECTRIC, INC., AND CROSS-CLAIM AGAINST POLYCAB INDIA, LTD.** |

American Wire Group, LLC ("AWG"), by its counsel, for its Answer and Defenses to the Complaint of Rosendin Electric, Inc. ("Rosendin"), states:

## ANSWER TO COMPLAINT

1.     By way of this Complaint, Plaintiff seeks damages in excess of $19 million; therefore, the amount in controversy exceeds $75,000.

1   **ANSWER:**

2   AWG admits that Plaintiff seeks damages in excess of $19 million and that the

3   amount in controversy exceeds $75,000. AWG denies all remaining allegations

4   contained in paragraph 1 of the Rosendin Complaint.

5   2.   At all times relevant hereto, Rosendin was and is a corporation duly

6   organized and existing under the laws of the State of California, with its principal

7   place of business in San Jose, California, and Rosendin was and is duly licensed as a

8   contractor by the California Contractor State License Board.

9   **ANSWER:**

10  AWG admits that Rosendin is a California corporation with its principal place

11  of business in San Jose, California, and that it holds a contractor's license. AWG

12  lacks knowledge or information sufficient to form a belief as to any "at all times"

13  qualifiers and therefore denies those allegations to the extent asserted.

14  3.   Rosendin is informed and believes, and based thereon alleges that,

15  AWG was and is, at all relevant times, a citizen of the State of Florida, and is a limited

16  liability company organized and existing under the laws of the State of Florida with

17  its principal place of business in Miami, Florida.

18  **ANSWER:**

19  Admitted.

20  4.   Rosendin is informed and believes, and based thereon alleges, that

21  AWG has succeeded to all of the liabilities of American Wire Group, Inc. ("AWG,

22  Inc.") that are relevant to this matter, and that although AWG, Inc. is now a dissolved

23  corporation, prior to its dissolution, it was at all relevant times a corporation

24  organized and existing under the laws of the State of Florida with its principal place

25  of business in Miami, Florida.

26  **ANSWER:**

27  Admitted as to AWG's succession to relevant liabilities of American Wire

28  Group, Inc., and as to AWG, Inc.'s Florida organization and principal place of

1  business prior to dissolution.

2      5.      Rosendin is informed and believes, and based thereon alleges, that

3  defendant Polycab is a Public Limited Company with its principal place of business

4  in India, which at all times mentioned herein was doing business in the State of

5  California.

6      **ANSWER:**

7  Admitted.

8      6.      This Court has personal jurisdiction over AWG, Polycab and Does 1

9  through 25, because at all times mentioned herein each of them conducted business

10  in California and, more specifically, within this judicial district, including the sale

11  and supply of the subject Polycab DC Feeders for the installation and use thereof on

12  this Project and sale of supply of products to at least one other construction project

13  located in this judicial district.

14      **ANSWER:**

15  Admitted as to AWG and Polycab. AWG lacks knowledge to admit or deny as

16  to other defendants and therefore denies the remainder of the allegations of Paragraph

17  6.

18      7.      Venue in this judicial district is proper because the contracts creating

19  the obligations on which this action is brought, were entered into and partially

20  performed at the Project which is located at 14295 Clay East Road in Herald,

21  California, in the judicial district in which this action is filed. (*See* Exhibit A, page 1

22  of Amended and Restated Agreement, and Exhibit B, page 004.)

23      **ANSWER:**

24  Admitted as to venue in this District for this action; AWG lacks knowledge as

25  to the quoted exhibit pages and therefore denies any characterization beyond the

26  documents themselves.

27      8.      Given the citizenship of all defendants, as alleged above, this Court also

28  has diversity jurisdiction over the instant action pursuant to 28 U.S.C. § 1332(a).

**ANSWER:**

Admitted as to diversity jurisdiction.

9.     Rosendin does not know the true names and capacities of defendants Does 1 through 25, inclusive, and on that basis designates said defendants by such fictitious names. When the true names and capacities of defendants Does 1 through 25, inclusive, or any of them become known, Rosendin will amend this complaint to state their true names and capacities. Rosendin is informed and believes, and on that basis alleges, that each of the defendants designated here as Does 1 through 25, inclusive, is in some manner responsible, liable or indebted to Rosendin in connection with the events or transactions referred to in this Complaint.

**ANSWER:**

AWG lacks knowledge or information sufficient to form a belief as to Does 1–25 and therefore denies.

10.     Rosendin is informed and believes, and on that basis alleges, that each of the defendants, including Does 1 through 25, inclusive, was and is the agent and/or representative of the remaining defendants, and that each of the defendants in doing the things alleged herein, acted and continues to act with the knowledge and consent of the remaining defendants.

**ANSWER:**

Denied for lack of knowledge or information sufficient to form a belief as to agency allegations.

11.     Rosendin designs and constructs utility grade photovoltaic solar projects throughout the United States as an engineering, procurement and construction ("EPC") contractor. This matter arises from the construction of a utility grade solar power project at the former Rancho Seco Nuclear Power Plant located in Herald, California, commonly known as the Rancho Seco 2 Solar Project (the "Project") for which Rosendin was the EPC contractor.

/ / /

**ANSWER:**

AWG admits that Rosendin was the EPC contractor for the Rancho Seco 2 Solar Project in Herald, California. AWG denies all remaining allegations in paragraph 11 not expressly admitted herein.

12.     In December of 2019, Rosendin entered into an amended and restated engineering, procurement and construction agreement with the owner of the Project, Rancho Seco Solar II, LLC ("Owner"), pursuant to which Rosendin agreed to design, engineer, furnish certain equipment, and construct the Project (the "EPC Agreement") for the price of $80,236,391. (See Exhibit A.) As a general matter, after the design, engineering, and permitting required for its work, Rosendin's work on the Project consisted of:

- Procurement of the required materials and equipment for the Project.
- Grading of the Project site and excavation of trenches for various wire and cable required for the Project, including the DC Feeders.
- Installation of the piers (the foundations for the tracking system, which holds the solar modules and rotates with the path of the sun to maximize energy production).
- Installation of the tracking system components.
- Installation of the solar modules onto the tracking system.
- Installation of the various electrical components for the Project (e.g., string wire, DC feeders, inverters and switchgear, etc.).
- Start-up and commissioning of the various components of the Project.
- Testing of the Project.

**ANSWER:**

AWG admits that in December 2019, Rosendin entered into an amended and restated engineering, procurement and construction agreement with the Project

owner, Rancho Seco Solar II, LLC, with a stated price of $80,236,391. AWG lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations, including the enumerated scope bullets, and therefore denies the same.

13.    In connection with the construction of the Project, in or about January of 2020, Rosendin entered into a purchase order agreement ("Purchase Order Agreement") with AWG, Inc. for the supply of certain electrical cable—specifically, the direct current feeders (the "DC Feeders")—to be installed for the Project. A true and correct copy of this Purchase Order Agreement is attached hereto and incorporated herein as **Exhibit B**. The January 2020 Purchase Order Agreement was modified by agreement of Rosendin and AWG in or about October of 2020 to add additional materials. A copy of the October 2020 Revision 1 to the Purchase Order Agreement is attached hereto and incorporated herein as **Exhibit C**. The January 2020 Purchase Order Agreement and October 2020 modification thereof is referenced herein, collectively, as the "Purchase Order Agreement.".

**ANSWER:**

AWG admits that Rosendin entered into a January 2020 purchase order agreement with AWG for the supply of DC Feeders for the Project, and that the purchase order was modified in or about October 2020 (Revision 1) to add additional materials, as referenced in Exhibits B and C. AWG denies all remaining characterizations and allegations not expressly admitted.

14.    The DC Feeders transmit the direct current electricity produced by the solar modules to the inverters which convert such electricity to alternating current for ultimate transmission to the electrical grid. In other words, any failure in a DC Feeder will result in none of the electricity produced by the solar modules associated with such DC Feeder being available for transmission to the grid, and a loss of revenue to the Owner.

**ANSWER:**

AWG admits DC feeders convey DC electricity from modules to inverters for

AMERICAN WIRE GROUP LLC'S ANSWER AND DEFENSES TO COMPLAINT AND CROSS-CLAIM

1   conversion and grid transmission; otherwise denied.

2       15.   AWG, in turn, entered into an agreement with defendant Polycab, as

3   manufacturer, for the supply of the DC Feeders for the Project for Rosendin's use

4   and installation. Rosendin is informed and believes, and thereon alleges, that AWG

5   provided Polycab the specifications and requirements for the DC Feeders under the

6   Purchase Order Agreement and that Polycab understood that Rosendin would install

7   Polycab's DC Feeders on the Project for their intended use.

8       **ANSWER:**

9       AWG admits that AWG entered into an agreement with defendant Polycab for

10  the supply of DC Feeders for the Project. AWG lacks knowledge or information

11  sufficient to form a belief as to Polycab's alleged knowledge, understanding, or state

12  of mind and therefore denies the remaining allegations.

13      16.   Polycab thereafter sold and provided the DC Feeders to AWG and they

14  were supplied and installed on the Project. Rosendin is informed and believes, and

15  based thereon alleges, that at the time of Polycab's agreement with AWG, Polycab

16  understood that its subject DC Feeders were intended for Rosendin's use and

17  installation on the Project, understood the requirements for, and intended use of, the

18  product, and understood that if the DC Feeders were defective or otherwise failed to

19  meet their intended use, that it was reasonably foreseeable that Rosendin would suffer

20  damage and interference with the anticipated prospective economic advantage of its

21  EPC Agreement with Owner.

22      **ANSWER:**

23      AWG admits only that Polycab sold and provided DC Feeders to AWG and

24  that DC Feeders were supplied and installed on the Project, and that Polycab

25  understood the DC Feeders were intended for use and installation on the Project.

26  AWG lacks knowledge or information sufficient to form a belief as to the remaining

27  allegations, and therefore denies the remaining allegations.

28      17.   Among other things, Polycab imprinted on its DC Feeder cable it

1    manufactured and supplied to the Project certain specifications of the type and

2    conditions of application for which it was intended to be used on the Project,

3    including for "wet or dry" conditions at wide temperature ranges, "DIR BUR" (direct

4    burial in the ground) and "UL LISTED E361222."

5        **ANSWER:**

6        AWG admits the cable bore imprints including "DIR BUR" and "UL LISTED

7    E361222"; all other allegations are denied.

8        18.    The EPC Agreement included certain Rosendin obligations to the

9    Owner with respect to the quality and standards for its work on the Project. As

10   relevant here, Rosendin warranted to the Owner that for a period of two (2) years

11   following the date that a Circuit was placed in service (the "Circuit Placed in Service

12   Date"—a "Circuit" consists of a group of solar modules associated with power

13   conversion stations daisy-chained together that are on the same overhead homerun

14   (i.e., the same cable) returning to the Project substation), that:

15       [A]ll Materials and Equipment [furnished by Rosendin] will be new and free

16       from Defects in materials and workmanship.

17   (**Exhibit A**, Section 17.1(c), Section 17.4.)

18       **ANSWER:**

19       AWG admits the EPC Agreement contains the quoted warranty language and

20   that the Agreement must be read as a whole; except as expressly admitted, Defendant

21   denies each and every material allegation contained in Paragraph 18 of the

22   Complaint.

23       19.    "Defect" is defined by the EPC Agreement as "[Rosendin work], or any

24   portion thereof, that is defective in design, engineering, materials or workmanship or

25   otherwise does not conform to any portion of [the EPC Agreement]."

26       **ANSWER:**

27       AWG admits the EPC Agreement contains the quoted "Defect" definition and

28   that the Agreement must be read as a whole; except as expressly admitted, Defendant

AMERICAN WIRE GROUP LLC'S ANSWER AND DEFENSES TO COMPLAINT AND CROSS-CLAIM

denies each and every material allegation contained in Paragraph 19 of the Complaint.

20.    Owner's remedies under the EPC Agreement with respect to breach of the foregoing warranty included Rosendin's obligation to:

> . . . defend, indemnify, and hold harmless . . . [the Owner] from and against any and all Losses . . . arising out of or resulting from . . . [Rosendin's] (or its Subcontractors' and **Vendors'** or their Personnel's) (i) performance of or failure to perform the Work or any of the other obligations under this Contract, (ii) breach of a representation, **warranty** or covenant in the . . . [EPC Agreement], or (iii) violation of any Laws and Codes.

**Exhibit A**, Section 19.1(a) (Emphasis added).

**ANSWER:**

AWG admits the EPC Agreement contains indemnity language substantially as paraphrased and that the Agreement must be read as a whole; except as expressly admitted, Defendant denies each and every material allegation contained in Paragraph 20 of the Complaint.

21.    "Loss" is defined by the EPC Agreement as "any claims, demands, damages, losses, liabilities, taxes (including disallowed, reduced, or deferred tax benefits), fines, costs, and expenses, including cost of experts and reasonable attorneys' fees and disbursements."

**ANSWER:**

AWG admits the EPC Agreement contains the quoted "Loss" definition and that the Agreement must be read as a whole; except as expressly admitted, Defendant denies each and every material allegation contained in Paragraph 21 of the Complaint.

22.    A breach of the warranty in the EPC Agreement would not only result in Rosendin's liability for the costs of correcting the Defect, but Rosendin could also have liability for the Owner's lost revenue and any liquidated damages that may be due to the offtaker of the electricity to be generated by the Project. Developers of

utility grade solar projects like the Project customarily enter into one or more agreements with one or more third-parties (i.e., offtakers) for the sale of the electricity generated by the project. In this case, the Owner contracted with the Sacramento Municipal Utility District ("SMUD") as the offtaker.

**ANSWER:**

Denied.

23.    As set forth above, one of Rosendin's first activities in connection with performance of the EPC Agreement was to procure the materials and equipment it was required to furnish for the Project, which included the DC Feeders.

**ANSWER:**

AWG admits only that Rosendin procured materials and equipment for the Project, including the DC Feeders. AWG denies any implication that AWG assumed responsibility for Rosendin's other procurement, installation, or performance activities, and on that basis denies the remainder of the allegations.

24.    In addition to requiring AWG to supply the DC Feeders for the Project, the Purchase Order Agreement incorporated the terms and conditions of the EPC Agreement:

> The goods and supplies covered by this Purchase Order Agreement are ordered for use by . . . [Rosendin] in performing the project identified on the face side of this Purchase Order Agreement. It is the intent of . . . [Rosendin and AWG] that any applicable contract documents, plans and specifications, and controlling governmental regulations shall be incorporated by reference into [Rosendin's] contract with . . . [AWG] and will form a basis of the bargain. **[AWG's] acceptance of this Purchase Order Agreement acknowledges . . . [AWG's] constructive or actual familiarity with the contents of said contract documents,** plans, specifications and regulations, and [AWG] hereby agrees to supply materials in strict accordance therewith.

(See **Exhibits B and C**, Conditions of Purchase, ¶6, emphasis added.) Thus, each of the terms and conditions of the EPC Agreement, including those identified above,

are part of the Purchase Order Agreement and AWG is bound thereby to the same extent as Rosendin.

**ANSWER:**

AWG admits that the Purchase Order Agreement contains incorporation language substantially as quoted. AWG denies the legal conclusion that each term and condition of the EPC Agreement binds AWG to the same extent as Rosendin, and denies the remainder of the allegations.

25.    The Purchase Order Agreement further provides:
[AWG's] warranty to . . . [Rosendin] shall be at least as extensive in coverage and duration as all warranties for the materials utilized given by . . . [Rosendin] to . . . [Project Owner] (or to other third parties, if any) pursuant to the contract documents, plans, specifications, and controlling government laws and regulations defining . . . [Rosendin's] obligations to third parties.

(**Exhibits B and C**, Conditions of Purchase, ¶21(b).)

**ANSWER:**

AWG admits that the Purchase Order Agreement contains the referenced warranty provision. AWG denies all remaining and inconsistent allegations contained in paragraph 25 of the Rosendin Complaint.

26.    Furthermore, AWG's performance obligations were not limited to the terms and conditions of the EPC Agreement, as the Purchase Order Agreement contained additional terms to which AWG was and is bound. Paragraph 21 of the Conditions of Purchase of the Purchase Order Agreement provides, in pertinent part:
**[AWG] hereby warrants and guarantees that the materials supplied hereunder are and shall remain free from both patent and latent defects in materials and workmanship** and will meet all applicable federal, state and local laws, regulations of trade authorities, agencies or commissions concerning the manufacture, sale, pricing or labeling of such items**. [AWG] shall make good at its own expense, and shall reimburse and indemnify . . . [Rosendin] for any damages resulting from, and bear all incidental and consequential costs arising from, any such defects in materials or workmanship which may occur,**

**develop or be discovered** prior to the later of (1) the first annual anniversary of the date of final acceptance by Owner and inspecting authority of the project, for which this Purchase Order Agreement was given, or (2) the date of release or expiration of Owner's rights and potential or actual claims against . . . [Rosendin] with respect the project. (See **Exhibits B and C**, Conditions of Purchase, ¶21; emphasis added.)

**ANSWER:**

AWG admits the Purchase Order contains the quoted "patent and latent defects" warranty language and timing language; the other allegations of the paragraph are denied.

27.    The Purchase Order Agreement also attached AWG's product data sheet, in which AWG represented and warranted, inter alia, that the subject DC Feeders were:

- "For use in free air, raceways or direct burial in accordance with NEC;"
- Had "Excellent moisture resistance, exceeds UL 44;" and
- Met various industry testing standards, including "UL 4703 Type PV," "National Electrical Code," ICEA S-95-658/NEMA WC70," and "UL 44 Type RHH or RHW-2".

(*See* **Exhibit B** at pg. 008).

**ANSWER:**

AWG admits the product data sheet attached to the PO contains the quoted statements; and denies the other allegations as stated.

28.    In short, the Purchase Order Agreement provided for AWG's full and complete indemnification of Rosendin for all losses associated with any defects in the DC Feeders, including without limitation, costs of replacing the DC Feeders, any lost revenue suffered by the Owner, and liquidated damages that may be due the offtaker as a result of such defects.

/ / /

**ANSWER:**

Denied.

29.    A little more than one (1) year after commencement of the two (2) year warranty period under the contract, the Owner began reporting failures and ground faults in the DC Feeders, and AWG was timely informed of the Owner's claims. In the course of investigation of the cause of the DC Feeder failures, Rosendin caused a portion of the DC Feeders to be tested and analyzed by an independent testing laboratory, Cable Testing Laboratories ("CTL"). The testing was performed under the direct supervision of Rosendin and AWG. AWG was actively involved in the testing process.

**ANSWER:**

AWG denies that the Owner began reporting failures and ground faults as alleged, denies that AWG was "actively involved" beyond limited communications, and lacks knowledge or information sufficient to form a belief as to the remaining allegations regarding CTL testing under Rosendin's supervision; therefore, AWG denies paragraph 29.

30.    Upon the conclusion of the testing process, CTL issued a final report indicating significant defects with the DC Feeders and recommended the replacement thereof (the "CTL Report"). (See **Exhibit D**.) The CTL Report found, *inter alia*, that the DC Feeders' insulation was deficient, including a lack of adequate moisture absorption resistance and an inability to support the necessary power operating stresses of the Project. It also found that the DC Feeder quality was not consistent and varied in extremely wide ranges from one cable to another and even along 20-foot cable sections. (See **Exhibit D**, pp. 33-34.)

**ANSWER:**

AWG admits only that CTL issued a final report. AWG denies CTL's conclusions and any characterization of defects or recommendations as alleged in paragraph 30.

1    31.    The defective DC Feeders caused approximately fifty percent of the

2    Project's power to go offline and not produce energy, and also caused damage to

3    fuses provided by others in the Project's solar power system. As a result of the test

4    results, and the fact that approximately fifty percent of the Project was offline and

5    not producing energy and revenue for the Owner as a result of the DC Feeder failures,

6    the Owner concluded that all of the DC Feeders installed on the Project needed to be

7    replaced and that contractually, Rosendin was so required to replace all of the DC

8    Feeders and damaged fuses.

9        **ANSWER:**

10   Denied.

11       32.    Specifically, in March 2023, the Owner made a demand upon Rosendin

12   to pay Owner's contractor's proposal for replacement of all the DC Feeders with non-

13   defective cables from another manufacturer (totaling over $23 million), plus the

14   Owner's lost revenue to date as a result of the reduced capacity of the Project of over

15   $4.8 million, and liquidated damages it owed to SMUD for this same reason of over

16   $2.8 million.Moreover, the continued defective condition of the DC Feeders

17   threatened future lost revenue to, and assessment liquidated damages against

18   Rosendin, by Owner. In all, the Owner demanded payment of over $30 million on

19   account of the DC Feeder failures. Rosendin promptly tendered the Owner's claim

20   to AWG for defense and indemnity. (See **Exhibit E**.)

21       **ANSWER:**

22   AWG denies the allegations contained in paragraph 32, including the amounts

23   demanded and tender alleged. AWG admits only that Rosendin made a demand to

24   AWG purporting to seek defense and indemnity. Except as so expressly admitted,

25   Defendant denies each and every material allegation contained in Paragraph 32 of

26   the Complaint.

27       33.    Notwithstanding the Owner's demand, and in order to mitigate its and

28   AWG's exposure for the defective DC Feeders, Rosendin was ultimately able to

obtain the Owner's agreement to allow it to replace the DC Feeders itself on the condition that Rosendin complete the replacement process and provide a completely operational Project. Rosendin was able to meet the Owner's established deadline for this replacement at a cost significantly less than that demanded by Owner, but Rosendin still incurred in excess of $19 million in so doing.

**ANSWER:**

Denied.

34.     During the course of the parties' discussions, Rosendin provided AWG the information it requested regarding Rosendin's claims and the subject issues. Among other things, Rosendin set up a Box account for the purpose of sharing documentation regarding the Project, including original test reports for the DC Feeders supplied by AWG, and offered AWG the opportunity to witness the DC Feeder replacement process. Moreover, Rosendin provided AWG with the opportunity to inspect the defective DC Feeders and even to take possession of and test some of the original AWG supplied and installed DC Feeders that were removed by Rosendin during the replacement process.

**ANSWER:**

AWG denies that Rosendin provided all information requested or reasonable opportunities for inspection, possession, or testing of removed cable. AWG further states that material portions of cable were disposed of or altered before full joint testing could occur. Except as so expressly admitted, Defendant denies each and every material allegation contained in Paragraph 34 of the Complaint.

## **FIRST CLAIM FOR RELIEF**

### **(Breach of Contract against AWG and Does 1 through 15, inclusive)**

35.     Rosendin incorporates the foregoing paragraphs as if fully stated hereat.

**ANSWER:**

AWG incorporates its answers to paragraphs 1 through 34, as fully set forth herein.

36.    AWG and Does 1 through 15, inclusive, were obligated under the Purchase Order Agreement to, among other things, supply to Rosendin DC Feeders and ancillary materials that were new and free from defects in materials and workmanship and that met all standards and requirements of the Purchase Order Agreement, including those in the EPC Agreement incorporated therein, that met all applicable government laws, and regulations of trade authorities, and that were suitable for the intended use of the products for the Project.

**ANSWER:**

AWG denies the allegations contained in paragraph 36 to the extent they assert obligations beyond the express language of the Purchase Order Agreement and any applicable incorporated terms, and otherwise denies the remainder of the statements and conclusions of law to which Defendant has no obligation to respond and therefore deemed denied.

37.    Said defendants, and each of them, materially breached their contractual obligations under the Purchase Order Agreement by, inter alia, supplying DC Feeders that were defective, failed in materials and workmanship and failed to meet the standards and requirements required under the Purchase Order Agreement.

**ANSWER:**

Denied.

38.    Said defendants' material breaches of the Purchase Order Agreement proximately caused Rosendin to incur substantial damages in excess of $19 million, with the exact amount to be proved at trial.

**ANSWER:**

Denied.

39.    The Purchase Order Agreement provides that in the event said defendants breached the contract, defendants would be liable to Rosendin for all losses, expenses and attorneys' and experts' fees and costs incurred as a result. Rosendin seeks to recover all such losses and expenses including attorneys' and

1    experts' fees against said defendants herein.

2    **ANSWER:**

3    Denied.

4    ## SECOND CLAIM FOR RELIEF

5    **(Breach of Express Warranty against AWG and Does 1 through 15, inclusive)**

6    40.    Rosendin incorporates the foregoing paragraphs as if fully stated hereat.

7    **ANSWER:**

8    AWG incorporates its answers to paragraphs 1 through 39 as its answer to

9    paragraph 40 of the Rosendin Complaint, to the extent applicable. To the extent

10    paragraph 40 is construed to require any additional response, AWG denies any

11    remaining allegations not expressly admitted.

12    41.    AWG and Does 1 through 15, inclusive, warranted in the Purchase

13    Order Agreement and pursuant to California Commercial Code Section 2313, that

14    the DC Feeders and other products they supplied to the Project were new and free

15    from defects in materials, design and workmanship, and were adequate for their

16    intended use and purpose on the Project.

17    **ANSWER:**

18    Denied.

19    42.    However, each of said defendants breached these warranties by, *inter*

20    *alia*, providing DC Feeders and ancillary products to the Project that were defective

21    in materials, design and workmanship, and were not adequate for their intended use

22    and purpose on the Project including, without limitation, failing to adequately protect

23    and insulate the cable, and the cable failing to properly transmit the direct current

24    electricity produced by the solar modules on the Project to inverters for ultimate

25    transmission to the electrical grid.

26    **ANSWER:**

27    Denied.

28    43.    Each of these acts and omissions of said defendants, and each of them,

singularly or in combination with others, constitutes a material breach of said warranty.

**ANSWER:**

Denied.

44.    Said defendants' material breaches of their warranty obligations proximately caused Rosendin to incur substantial damages in excess of $19 million, with the exact amount to be proved at trial.

**ANSWER:**

Denied.

45.    The Purchase Order Agreement provides that in the event said defendants breached the contract, defendants would be liable to Rosendin for all losses, expenses and attorneys' and experts' fees and costs incurred as a result. Rosendin seeks to recover all such losses and expenses including attorneys' and experts' fees against said defendants herein.

**ANSWER:**

Denied.

## THIRD CLAIM FOR RELIEF

### (Breach of Implied Warranty against AWG,

### Polycab and Does 1 through 25, inclusive.)

46.    Rosendin incorporates the foregoing paragraphs as if fully stated hereat.

**ANSWER:**

AWG incorporates its answers to paragraphs 1 through 45, as fully set forth herein.

47.    AWG, Polycab and Does 1 through 25, inclusive, were merchants of goods of the kind provided, had reason to know the particular purpose for the goods were required, and impliedly warranted pursuant to California Commercial Code Sections 2314 and 2315 that each would design, manufacture and/or provide the DC Feeders in a good and workmanlike manner, that the product was merchantable, was

suitable for ordinary purposes and fit for its intended use on the Project.

**ANSWER:**

AWG makes no answer to paragraph 47 of the Rosendin Complaint, as paragraph 47 contains legal conclusions for which no answer is required. To the extent an answer is required, AWG denies the allegations.

48.    However, said defendants breached these warranties by, *inter alia*, providing DC Feeders and ancillary product to the Project that were defective in materials, design and workmanship, and were not adequate for their intended use and purpose on the Project including without limitation failing to adequately protect and insulate the cable and failing to have the cable properly transmit the direct current electricity produced by the solar modules on the Project to inverters for ultimate transmission to the electrical grid.

**ANSWER:**

Denied.

49.    Each of these acts and omissions of said defendants, and each of them, singularly or in combination with others, constitute a material breach of said warranty.

**ANSWER:**

The allegations contained in Paragraph 49 are statements and conclusions of law to which Defendant has no obligation to respond and therefore deemed denied.

50.    Said defendants' material breaches of their warranty obligations proximately caused Rosendin to incur substantial damages in excess of $19 million, with the exact amount to be proved at trial.

**ANSWER:**

Denied.

51.    The Purchase Order Agreement provides that in the event said defendants breached the contract, defendant AWG would be liable to Rosendin for all losses, expenses and attorneys' and experts' fees and costs incurred as a result.

1  Rosendin seeks to recover all such losses and expenses including attorneys' and

2  experts' fees against said defendants herein.

3       **ANSWER:**

4       Denied.

5              **FOURTH CLAIM FOR RELIEF**

6       **(Negligence—Supply of Defective Product against AWG,**

7            **Polycab and Does 1 through 25, inclusive.)**

8       52.    Rosendin incorporates the foregoing paragraphs as if fully stated hereat.

9       **ANSWER:**

10      AWG incorporates its answers to paragraphs 1 through 52, as fully set forth

11  herein.

12      53.    At all times relevant herein, Defendants AWG, Polycab and Does 1

13  through 25, inclusive, owed a duty to Rosendin to exercise reasonable care in the

14  design, provision, assembly, manufacture and inspection of the DC Feeders and other

15  products. Said defendants violated this duty by negligently designing, providing,

16  assembling, manufacturing and inspecting said products by failing to act reasonably

17  prudent under the circumstances including, *inter alia*;

18      a.    Failing to adequately design the subject cable, insulation, and related

19            products;

20      b.    Failing to adequately manufacture and assemble the subject cable,

21            insulation, and other products;

22      c.    Failing to manufacture, provide, assemble, install and inspect the subject

23            cable, insulation, and other products in a good and workmanlike manner;

24      d.    Failing to adequately inspect and test the subject cable, insulation, and

25            other products before shipping them;

26      e.    Using improper parts, components and/or materials in the manufacture

27            and provision of the subject cable, insulation, and other products;

28      f.    Failing to adequately, properly and/or safely instruct, train and/or

supervise employees, agents and/or others as to the proper manufacture, assembly, provision, inspection, and/or testing with regard to the subject cable, insulation, and other products;

g.  Failing to provide, establish and/or follow proper and adequate procedures to ensure the integrity and workmanship of the subject cable, insulation, and other products;

h.  Failing to warn Rosendin of the defective condition, which defendants knew or should have known created an unreasonable risk of harm to the Project and Rosendin; and

i.  Otherwise failing to use reasonable care under the circumstances.

**ANSWER:**

Paragraph 53 and subparts (a)–(i): Denied.

54.  Each of the above-referenced acts and omissions, singly or in combination with others, constituted negligence, which proximately caused damages suffered by Rosendin of in excess of $19 million, with the exact amount to be proved at trial.

**ANSWER:**

The allegations contained in Paragraph 54 are statements and conclusions of law to which Defendant has no obligation to respond and therefore deemed denied.

### FIFTH CLAIM FOR RELIEF

**(Negligence—Interference with Prospective Economic Advantage against Polycab and DOES 16 through 25, inclusive.)**

AWG makes no answer to the Fifth Claim of Rosendin, as the Fifth Claim does not purport to state a cause of action against AWG and no answer is required. In the event an answer is required, AWG denies the allegations of paragraphs 55 through 59.

WHEREFORE, American Wire Group, LLC, by its counsel, requests that judgment be entered in its favor, that all claims be dismissed with prejudice, for costs,

1  and for such further relief as this Court deems appropriate.

2  ## DEFENSES

3  American Wire Group, LLC ("AWG"), for its Affirmative Defenses, without

4  assuming the burden of proof or persuasion, states:

5  **First Affirmative Defense – Unclean Hands / Spoliation-Related Conduct**

6  Rosendin's claims are barred, in whole or in part, because Rosendin failed to

7  preserve and provide AWG with a fair opportunity to jointly inspect and test

8  allegedly defective DC Feeders removed from the Project, proceeded with unilateral

9  removal and replacement activities, and seeks to impose costs and damages unrelated

10  to AWG's contractual obligations.

11  **Second Affirmative Defense – Prior Material Breach**

12  Rosendin materially breached the Purchase Order Agreement by, among other

13  things, failing to adhere to specified installation, handling, storage, and

14  trenching/backfill requirements applicable to the DC Feeders and by failing to

15  comply with submittal, inspection, and notice procedures, thereby barring or

16  reducing recovery.

17  **Third Affirmative Defense – Failure of Notice / Condition Precedent**

18  Rosendin failed to provide contractually required prompt written notice of

19  alleged nonconformities and an opportunity to cure before undertaking replacement,

20  defeating or limiting any remedy.

21  **Fourth Affirmative Defense – Failure to State a Claim**

22  One or more causes of action are insufficient as pled under California law,

23  including negligence theories barred by the economic loss rule and warranty claims

24  exceeding any contractual limitations.

25  **Fifth Affirmative Defense – Waiver**

26  By accepting delivery, proceeding with installation, and commissioning

27  without timely objection, and by directing remedies inconsistent with the contract,

28  Rosendin waived certain alleged defects and remedies.

**Sixth Affirmative Defense – Estoppel**

Rosendin's conduct, including directing scope and methods of replacement and representing compliance with contract specifications, estops it from asserting inconsistent claims.

**Seventh Affirmative Defense – Laches**

To the extent equitable relief is sought, Rosendin's delay in asserting claims and seeking replacement to AWG's prejudice bars or limits recovery.

**Eighth Affirmative Defense – Spoliation / Adverse Inference**

Rosendin's removal, alteration, or failure to preserve representative samples and associated data from the Project warrants adverse inference instructions and limits recoverable damages.

**Ninth Affirmative Defense – Comparative Fault / Setoff**

Damages, if any, must be reduced by the comparative fault of Rosendin, Owner, and third parties (including Polycab) and by contractual and equitable setoff and credit for betterment and upgrades associated with any replacement cable and work.

**Tenth Affirmative Defense – Limitation of Damages**

Any recovery is limited to the contractually permitted remedies and excludes consequential, incidental, lost-revenue, or liquidated damages to the extent disclaimed or unrecoverable under the Purchase Order Agreement and applicable law.

**Eleventh Affirmative Defense- Failure to Mitigate**

Plaintiff, though under a duty to do so, has failed and neglected to mitigate their alleged damages, and, therefore, cannot recover against this answering Defendant, whether as alleged or otherwise.

**Twelfth Affirmative Defense- Misuse and Improper Maintenance**

Defendant hereby alleges on information and belief that persons or entities other than this answering Defendant misused and failed to properly maintain or repair

the subject property, thereby causing or contributing to the damages, if any, alleged in the Complaint.

**Reservation of Rights**

AWG reserves the right to amend this Answer and to assert additional defenses and/or supplement, alter, or change its Answer and defenses upon completion of appropriate investigation and discovery.

WHEREFORE, American Wire Group, LLC, by its counsel, requests that judgment be entered in its favor, for costs, and for such further relief as this Court deems appropriate.

## AMERICAN WIRE GROUP, LLC'S
## CROSSCLAIM AGAINST POLYCAB INDIA, LTD.

American Wire Group, LLC ("AWG"), by its counsel, for its Crossclaim against Polycab India Ltd. ("Polycab"), alleges as follows:

**Jurisdiction, Parties, and Venue**

1. AWG is a Florida limited liability company with its principal place of business in Miami, Florida.

2. Polycab is a public limited company with its principal place of business in India and conducted business in California related to the Project.

3. This Court has personal jurisdiction over Polycab because, at all relevant times, Polycab conducted business in California and, more specifically, including the sale and supply of the Polycab DC Feeders for the installation and use on the Project (as defined below) and venue is proper in this District because Polycab supplied DC Feeders for use and installation on the Rancho Seco 2 Solar Project (the "Project"), within this District.

**Background**

4. Rosendin and AWG, Inc. entered a January 2020 purchase order for DC Feeders, later modified in October 2020 (Revision 1), for the Rancho Seco 2 Solar Project; those documents are referenced as Exhibits B and C to the Complaint.

5. AWG contracted with Polycab to manufacture and supply the DC Feeder circuits for AWG, including under AWG purchase orders PO 118157 and PO 118600, attached as Exhibit 1 and Exhibit 2.

6. AWG provided Polycab with the requirements for the DC Feeders for the Project. Polycab knew that Rosendin would install Polycab's DC Feeders on the Project. Polycab understood that the Polycab DC Feeders were intended for Rosendin's use on the Project. Polycab understood the requirements and intended use of the DC Feeders. Polycab understood that if the DC Feeders were defective or otherwise failed to meet their intended use, AWG and Rosendin would suffer damages.

7. Rosendin sued AWG alleging defects in the DC Feeders and asserting more than $19 million in damages, which AWG denies.

**COUNT I – BREACH OF CONTRACT (Against Polycab)**

8. Conditional Allegations: If, and only if, the trier of fact finds that any DC Feeders supplied by Polycab failed to conform to the specifications and requirements provided by AWG for the Project, then Polycab materially breached the AWG/Polycab agreement.

9. Factual Bases: The contractual specifications communicated by AWG to Polycab governed conductor size, insulation rating, listing/marking, and suitability for direct burial; any nonconformity in those respects would constitute breach.

10. Damages: In such event, AWG seeks recovery-over from Polycab for amounts, if any, AWG is adjudged to owe Rosendin attributable to nonconforming Polycab product, including replacement cable cost, removal/reinstallation labor, testing/inspection, and reasonable attorneys' fees and experts' costs as permitted, in an amount exceeding $75,000 to be proven at trial.

**COUNT II – IMPLIED CONTRACTUAL INDEMNITY (Against Polycab)**

11. Conditional Allegations: If any liability is imposed on AWG to Rosendin arising from defects in DC Feeders manufactured by Polycab, then Polycab is

obligated in implied contractual indemnity to reimburse AWG proportional to Polycab's comparative fault.

12. Factual Bases: AWG did not manufacture the DC Feeders; Polycab designed and produced them for AWG to supply to Rosendin for the Project.

13. Damages: Indemnity in the amount of any judgment or settlement paid by AWG attributable to Polycab's product, plus defense fees and costs allocable to such claims, to be determined at trial.

**COUNT III – BREACH OF EXPRESS WARRANTY (Against Polycab)**

14. Conditional Allegations: If the DC Feeders are found nonconforming to express representations in the AWG/Polycab agreement, including being new and free of defects in materials, design, and workmanship, then Polycab breached its express warranties.

15. Factual Bases: The cable bore markings including "DIR BUR" and "UL LISTED E361222" and other product data were part of the specifications/representations associated with the supplied product.

16. Damages: AWG seeks recovery-over for any warranty-based sums owed to Rosendin attributable to Polycab product, including replacement, labor, testing, and fees/costs as allowed, in an amount to be proven.

**COUNT IV – BREACH OF IMPLIED WARRANTY (Against Polycab)**

17. Conditional Allegations: If the DC Feeders are adjudged unmerchantable or unfit for the particular purpose communicated by AWG, then Polycab breached implied warranties.

18. Factual Bases: AWG provided project requirements to Polycab for feeders intended for installation and use on the Rancho Seco 2 Solar Project.

19. Damages: Recovery-over for amounts, if any, AWG is obligated to pay due to such implied warranty breach, including direct replacement costs and reasonable incidentals, to be proven.

/ / /

1

2

## COUNT V – NEGLIGENCE – SUPPLY OF DEFECTIVE PRODUCT
## (Pled in the Alternative) (Against Polycab)

3    20. Conditional Allegations: If the trier of fact finds that Polycab failed to

4    exercise reasonable care in the design, manufacture, or testing of the DC Feeders and

5    such failure caused Rosendin's alleged harm, then Polycab is liable in negligence to

6    AWG for comparative indemnity and contribution.

7    21. Factual Bases: Alleged failures may include nonconforming insulation

8    properties, inconsistent quality along cable lengths, or failure to meet specified

9    ratings and listings, as asserted by Rosendin and denied by AWG.

10    22. Damages: Comparative indemnity/contribution to AWG for any

11    adjudicated sums and defense costs allocable to product-defect issues, to be

12    determined.

13    14    ## COUNT VI – NEGLIGENCE – INTERFERENCE WITH
## PROSPECTIVE ECONOMIC ADVANTAGE

15    ## (Pled in the Alternative) (Against Polycab)

16    23. Conditional Allegations: If Polycab's negligent supply of nonconforming

17    feeders foreseeably disrupted AWG's contractual and economic relationship with

18    Rosendin, then AWG seeks damages for negligent interference pled in the alternative

19    to contract and warranty theories.

20    24. Factual Bases: Polycab knew the feeders were for Rosendin's installation

21    on the Project and that AWG's performance and compensation depended on

22    conforming product.

23    25. Damages: Lost profits on the Purchase Order to the extent proven,

24    incremental administrative costs, and reputational harm-related mitigation costs, in

25    amounts to be proven, not duplicative of contract/warranty recovery.

26    / / /

27    / / /

28    / / /

1

**PRAYER FOR RELIEF**

2

WHEREFORE, AWG requests that judgment be entered in its favor and

3

against Polycab India, Ltd. as follows:

4

a. Judgment in favor of AWG and against Polycab on the foregoing counts,

5

in an amount exceeding $75,000 to be determined at trial;

6

b. An award of attorneys' fees and experts' costs where allowed by contract

7

or law;

8

c. Costs of suit; and

9

d. Such other and further relief as the Court deems just and proper.

10

**JURY DEMAND**

11

AWG demands a jury trial on all triable issues.

12

Dated: January 12, 2026                    SEGAL MCCAMBRIDGE

13

SINGER & MAHONEY, LTD.

14

15

By:/s/ *Teresa L. Ortega-Smith*

16

DANIEL A. CRIBBS
TERESA L. ORTEGA-SMITH

17

Attorneys for Defendant and Cross-
Claimant, AMERICAN WIRE GROUP,

18

LLC

19

20

21

22

23

24

25

26

27

28

AMERICAN WIRE GROUP LLC'S ANSWER AND DEFENSES TO COMPLAINT AND CROSS-CLAIM

1

**CERTIFICATE OF SERVICE**

2

I, Mandy Fine, declare:

3

At the time of service, I was over the age of 18 and not a party to this action.

4

I am employed in the County of Los Angeles, State of California. My business

5

address is 11900 W. Olympic Blvd., Suite 500, Los Angeles, CA 90064.

6

On January 12, 2026, I served the within document(s):

7

**AMERICAN WIRE GROUP LLC'S ANSWER AND DEFENSES TO**

8

**COMPLAINT OF ROSENDIN ELECTRIC, INC., AND CROSS-CLAIM**

9

**AGAINST POLYCAB INDIA, LTD**

10

☒ **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the

11

document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the

12

CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

13

14

I declare under penalty of perjury under the laws of the State of California that

15

the above is true and correct.

16

Dated:  January 12, 2026

17

/s/ *Mandy Fine*

18

MANDY FINE

19

20

21

22

23

24

25

26

27

28